1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 PRISCILLA SOLORIO and MARIANO DIAZ, on behalf of themselves and all others similarly situated, ) | Case No.: 1:20-cv-01051 NONE JLT |
| 12 ) | FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTION TO |
| 13 Plaintiffs, ) | COMPEL ARBITRATION |
| 14 v. ) | (Doc. 7) |
| 15 ABC PHONES OF NORTH CAROLINA, INC. ) and DOES 1-100, ) | |
| 16 ) | |
| 17 Defendants. ) | |

18          Priscilla Solorio and Mariano Diaz were employed by ABC Phones of North Carolina, Inc., at

19 retail locations in California.  Plaintiffs seek to hold their former employer liable for wage and hour

20 violations under California law, on behalf of a class of others similarly situated.  (*See generally* Doc.

21 1-3)  Defendant ABC asserts Plaintiffs agreed to arbitrate claims on an individual basis and seeks to

22 compel arbitration of the claims pursuant to that agreement.  (Doc. 7)  Plaintiffs oppose the motion,

23 asserting ABC has not established the existence of an arbitration agreement and any agreement

24 between the parties was unconscionable.  (Doc. 8)

25          The Court found the matter suitable for decision without oral arguments, and the motion was

26 taken under submission pursuant to General Order 618 and Local Rule 230(g).  (Doc. 11)  For the

27 following reasons, the Court recommends Defendant's motion to compel arbitration be **GRANTED**

28 and the action be **STAYED**.

**I.      Background**

Plaintiffs allege they are former store managers for ABC Phones of North Carolina, and were classified as "non-exempt, hourly" employees.  (Doc. 1-3 at 3, ¶ 4)  Priscilla Solorio was hired by ABC in March 2018 and became a store manager in September 2018.  (*Id.* at 6, ¶ 18)  Solorio remained a store manager until her employment with Defendant ended in August 2019.  (*Id.*)  During the course of her employment, Solorio worked at stores located in Delano and Fresno, California.  (*Id.*)  Mariano Diaz worked as a store manager in Chula Vista, California, "from approximately October 2017 to June 2019."  (*Id.*, ¶ 19)

According to Plaintiffs, "they typically were scheduled to work eight hours per day, five days a week, for a total of approximately 40 hours per week."  (Doc. 1-3 at 8, ¶ 32)  Plaintiffs contend they "were regularly required by management to work additional hours far beyond this scheduled time," and some days "worked ten hours per day and more."  (*Id.*) They contend they were "regularly unable to take a meal period at the required time, and would otherwise have to perform work and be under Defendant's control during breaks."  (*Id.*)  Plaintiffs assert ABC employees are "routinely denied meal and rest periods for two reasons: (1) Defendant does not authorize, permit, and/or make available timely meal and rest breaks" and (2) employees "are often too busy with work during the day to have time to take bona fide meal and rest breaks."  (*Id.* at 10, ¶ 40)

Plaintiffs allege the ABC Phones employees were required to "perform off-the-clock work for which they [were] not adequately compensated."  (Doc. 1-3 at 3, ¶ 5)  For example, Plaintiffs assert that ABC "requires its Store Managers to arrive at the store prior to the start of their paid shifts to perform work activities," such as unlocking the store, disengaging the alarm, logging in to the computer system, and loading "the necessary application to clock in to work via Defendant's timekeeping system."  (*Id.* at 9, ¶ 35)  Plaintiffs estimate they "spent approximately five to ten minutes performing work-related tasks" before they were "on-the-clock."  (*Id.*)  Plaintiffs contend other "off-the-clock" task occurred before and after their shifts, "including… completing sales, inventories, creating reports, training new employees, and cleaning."  (*Id.*, ¶ 36)  They allege that off-the-clock tasks continued away from the stores, when they received "work-related calls and text messages outside of their shifts from Defendant's managers and employees, without pay."  (*Id.*, ¶ 37)

2

According to Plaintiffs, they were "required to pay out of pocket for necessary business expenses accrued as result of their work for Defendant," without reimbursement. (Doc. 1-3 at 12, ¶ 47) Plaintiffs assert ABC Phones required them "to use their personal cellular phones and personal cellular voice, text, and date plans for extensive, regular work-related communications." (*Id.*) Plaintiffs allege the communications included work calls, text messages, and use of group message applications. (*Id.*)

In addition, Plaintiffs assert ABC did not provide them "accurate wage statements as required by California." (Doc. 1-3 at 12, ¶ 48) They contend ABC employees "receive wage statements that do not reflect all hours worked, premium pay for missed meal and rest break, and applicable overtime premiums." (*Id.*) Plaintiffs allege they are "owed wages and premium pay for all time worked, overtime, and missed meal and rest breaks when their employment ends." (*Id.*, ¶ 49)

Based upon the foregoing, Plaintiffs filed a complaint on June 22, 2020, in Kern County Superior Court Case No. BCV-20-101428. (Doc. 1-3 at 2) Plaintiffs seek to challenge the applicable policies and practices of their former employer on behalf of themselves and others similarly situated. (*Id.* at 2) Specifically, Plaintiffs seek to hold ABC liable for the following: (1) failure to compensate for all hours worked in violation of Cal. Labor Code §§ 200, 204, 1194, and 1198; (2) failure to pay overtime wages in violation of Cal. Labor Code §§ 200, 510, 1194; (3) failure to provide meal and rest periods as required under Cal. Labor Code §§ 203, 223, 226.7, 512, and 1998; (4) failure to timely reimburse for necessary business expenditures under Cal. Labor Code § 2802; (5) failure to provide accurate, timely, and itemized wage statements in violation of Cal. Labor Code § 226; (6) waiting time penalties under Cal. Labor Code §§ 201-203; and (7) unfair business practices in violation of Cal. Bus. & Prof. Code § 17200. (*Id.* at 2, 16-27) On July 30, 2020, ABC filed a Notice of Removal (Doc. 1), thereby initiating the action in this Court.

On November 25, 2020, ABC filed the motion to compel arbitration now bending before the Court, asserting Plaintiffs "each executed an arbitration agreement" and agreed to arbitrate claims encompassed in this lawsuit on an individual basis. (Doc. 7-1 at 2, 8) Thus, ABC seeks to compel Plaintiff to arbitrate the claims, dismissal of the class action allegations, and a stay of the action pending completion of arbitration. (Doc. 7 at 2) Plaintiffs filed their opposition to the motion on January 13, 2021 (Doc. 8), to which ABC filed a reply on January 20, 2021 (Doc. 10).

## II.        Evidence of Arbitration Agreements and Objections Thereto

Defendant contends that "when Plaintiffs were hired by ABC, they each executed an arbitration agreement."  (*See* Doc. 7-1 at 2)  ABC reports Diaz and Solorio had different hiring procedures—which the company refers to as "on-boarding"— because Diaz was brought in to the company "as part of ABC's acquisition of another wireless company, 4G Wireless."  (*Id.* at 2)  After Diaz accepted the offer, he "was on-boarded in or around February 2016."  (*Id.,* citing Patel Decl. ¶ 4)  Former 4G Wireless employees, such as Diaz, were required to complete an arbitration agreement no later than December 2016 if they wanted to be eligible to earn commissions. (*Id.*; *see also* Doc. 7-2, Patel Decl. ¶¶ 5, 18)  Solorio, who "was not a former 4G employee, …went through ABC's normal on-boarding process" when she was hired in March 2018.  (Doc. 7-1 at 2)

During the on-boarding process, "Solorio and Diaz both utilized ABC's online employee interface called Learning Management System ('LMS') to access a course titled "Arbitration Agreement for CA- ABC Phones of NC."  (Doc. 7-1 at 3, citing Patel Decl. ¶¶ 11-12)  Meenal Patel, who has "worked in the Training Department for ABC" since 2004, explained the LMS system, as well as other electronic employment tools used by ABC, required the employees "to enter a login that was assigned to each of them by ABC at the time each was hired, along with a password that he or she was required to create for himself or herself the first time they each logged on to the system."  (*Id.* at 3, citing Patel Decl. ¶¶ 7-10; *see also* Doc. 10-2 at 3, ¶ 2)

Ms. Patel reports that Solorio and Diaz "were required to complete two 'courses' in the LMS." (Doc. 7-2 at 3, Patel Decl. ¶ 11) Notably, at the time Diaz completed the courses, the company used the Greenlight LMS, but by the time Solorio started, had switched to a different system and used the Cornerstone LMS.  (*Id.,* ¶ 7)  However, "for purposes of reviewing and assenting to ABC's arbitration agreement, both the Greenlight and the Cornerstone system operated similarly and displayed similar language on the screens asking for each employee's acknowledgement."  (*Id.*, ¶ 14)

The first course required Plaintiffs to input their unique usernames and passwords prior to the display of "a PDF of the Arbitration Agreement for CA - ABC Phones of NC."  (Doc. 7-2 at 4, Patel Decl. ¶ 11)  Once the PDF was launched, Plaintiffs "had to back out… and launch the second course, which was titled 'Arbitration Agreement for CA."  (*Id.* at 4, ¶ 12)  Diaz and Solorio "each had to click-

4

through an acknowledgement" and the computer screen indicated that "by clicking a button labeled 'Acknowledge,' Plaintiffs were agreeing to the terms of 'Arbitration Agreement for CA – ABC Phones of NC.'"  (*Id.*, ¶¶ 12-13)  According to Ms. Patel, "Only after Plaintiffs launched *both* the Arbitration Agreement and the Acknowledgement courses in the LMS was the Arbitration Agreement considered completed."  (*Id.*, ¶ 15, emphasis added)  Defendant asserts that as part of the on-boarding process, Diaz completed these arbitration courses in the Greenlight LMS on July 2, 2016; and Solorio completed the arbitration courses in the Cornerstone LMS on March 9, 2018.  (Doc. 7-1 at 4; *see also* Doc. 7-2 at 3-5, ¶¶ 7, 18-19)

### A.    Agreement Displayed in the PDF Format

Initially, Ms. Patel indicated the Arbitration Agreements PDFs viewed during the LMS course were different for Diaz and Solorio, though "[t]he two versions… [were] nearly identical in all material respects."  (Doc. 7-2 at 4, Patel Decl. ¶ 11) Ms. Patel asserted, "A true and correct copy of the electronically stored PDF that was displayed when Plaintiff Diaz  completed the [arbitration] 'course' is being filed along with ABC's Motion as **Exhibit 'A'**," which was entitled "Arbitration Agreement."  (*Id.*; *see also* Doc. 7-4) (emphasis in original)  In addition, Ms. Patel stated: "A true and correct copy of the electronically stored PDF that was displayed when Plaintiff Solorio completed the above referenced 'course' is being filed along with ABC's Motion as **Exhibit 'B'**," which was entitled "Arbitration Agreement (CA)."  (*Id.*; *see also* Doc. 7-5) (emphasis in original)

Opposing the motion to compel arbitration, Plaintiffs observed that Exhibit B, which Ms. Patel indicated was viewed by Solorio, "indicate[d] at the bottom of each page that it was revised in August 2018."  (Doc. 8 at 5, citing Doc. 7-5)  Plaintiffs note that "Ms. Patel's declaration and the LMS Report both state that Plaintiff Solorio executed the arbitration agreement on March 9, 2018—months before the apparent date of the purported arbitration agreement at ECF 7-5."  (*Id.* at 6, citing Doc. 7-2, ¶ 19; Doc. 7-8 at 5 [Exhibit E])  Plaintiffs assert, "After [counsel] pointed this out in pre-motion meet and confer, Defendant's counsel provided an earlier version of the agreement."  (*Id.* at 6, n.1, citing Doc. 7-9 at 50 [Exhibit F]) Plaintiffs contend, "How . . . Solorio could have reviewed the 8.2018 version in March 2018, . . . remains unexplained."  (*Id.* at 6, n.1)

In reply, ABC asserts that counsel made a "clerical human error" when it included Exhibit 'B'

in its motion package and drafted Ms. Patel's declaration to reference Exhibit 'B' instead of including only Exhibit 'A' for both Plaintiffs." (Doc. 10 at 4, citing Gray Supp. Decl. ¶ 2) Brandon Gray, counsel for ABC, reports he believes that Exhibit B "was provided to [his] office in connection to other employees in separate matters where arbitration is at issue," and his reference to the document was an error when preparing a declaration for Ms. Patel. (Doc. 10-1 at 2, Gray Supp. Decl. ¶ 2)

In addition, Ms. Patel asserted that she "should have referenced Exhibit 'A' for both Solorio and Diaz." (Doc. 10-2 at 3, ¶ 7) According to Ms. Patel, "In order to be sure of the version of the Arbitration Agreement displayed to Plaintiff Solorio on March 9, 2018, I accessed Defendant's LMS system as an administrator on January 15, 2021, and conducted a 'double check' of the records relating to arbitration for Plaintiff Solorio." (*Id.*, ¶ 8) Ms. Patel reports that in the LMS system, she selected "View Training Details" for Solorio, which displayed the course description. (*Id.* at 3-4, ¶¶ 11-12; *see also* Doc. 10-3 at 2) She asserts, "The course description at the bottom [of the screen] shows that the 'Arbitration Agreement for CA – ABC Phones of NC' was a completed 'publications' course." (*Id.*, ¶ 12; *see also* Doc. 10-3 at 3) Ms. Patel clicked "Launch" for the publication and "was able to see the PDF document stored in the LMS." (*Id.*) In doing so, Ms. Patel confirmed "[t]he stored document is Defendant's Arbitration agreement… [and] the version that was submitted as Exhibit 'A'." (*Id.*, ¶ 13; *see also* Doc. 10-3 at 4-8)

## B.   Evidence of Completion of Courses

Ms. Patel reports Diaz completed the LMS arbitration courses on July 2, 2016, and Solorio completed the LMS arbitration courses on March 9, 2018. (*Id.* at 5, ¶¶ 18-19; *see also* Exhs. D and E). Defendant provided the LMS Reports for both Diaz and Solorio to confirm Diaz completed a publication course entitled "Arbitration Agreement for CA - ABC Phones of NC" and curriculum course entitled "Arbitration Agreement of California" on July 2, 2016. (Doc. 7-7 at 4) The LMS report for Solorio indicates she completed the "Arbitration Agreement of California" and curriculum on March 9, 2018. (Doc. 7-8 at 5 [Exhibit E]).

In opposing the motion to compel, Plaintiffs observe the LMS Report in Exhibit E "does not show that Plaintiff Solorio ever completed the 'Arbitration Agreement for CA - ABC Phones of NC' 'Publications' course. (Doc. 8 at 6) Plaintiffs contend, "The screenshots at ECF 7-6 show that this

course is specifically titled 'the Arbitration Agreement for CA - ABC Phones of NC' but there is no reliable evidence that Plaintiff Solorio completed it." (*Id.*, citing Doc. 7-8 at 5) However, Plaintiffs acknowledge that during the meet and confer process prior to filing this motion, ABC provided Plaintiffs' counsel with an LMS Report showing Solorio completed the following arbitration courses: "Arbitration Agreement of California" (curriculum), "Arbitration Agreement for CA - ABC Phones of NC" (publication), "Arbitration Agreement of ABC Phones - NC" (curriculum), and "Arbitration Agreement ABC Phones of North Carolina" (publication) on March 9, 2018. (*Id.*, citing Doc. 7-9)

In reply, addressing Plaintiffs' observations related to inconsistencies between the LMS Reports for Solorio found in Exhibit E and F, Defendant reports that Exhibit E was "an abridged copy of the LMS Report for Plaintiff Solorio," and acknowledges it "should have been the full LMS." (Doc. 10 at 2) Mr. Gray notes he "mistakenly included" the abridged document, while "[t]he correct LMS report that should have been labeled as pages 14-28 of Exhibit 'F', which is the full LMS including the relevant entries evidencing that Plaintiff Solorio viewed and electronically assented to Defendant's Arbitration Agreement." (Doc. 10-1 at 2, ¶ 3) To the extent the same information is conveyed in a different format, Ms. Patel explains: "When an LMS report is commissioned from Defendant's LMS, the person pulling down the report has the option to customize the fields that will appear in the report," and the information pulled and presented in Exhibit F "was more extensive." (Doc. 10-2 at 3, ¶ 6) Thus, Defendant's records indicate Solorio also completed the course entitled "Arbitration Agreement for CA – ABC Phones of NC" on March 9, 2018. (*Id.* at 2-3, Patel Supp. Decl. ¶¶ 4-5)

## C. Objections

Plaintiffs assert "the Court should strike Defendant's new and repackaged reply evidence." (Doc. 11-1 at 3) Plaintiffs assert, "The introduction of new evidence in reply papers is improper where the nonmovant does not have the opportunity to respond to the new evidence." (*Id.* at 4, citing *J.G. v. Douglas County Sch. Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)). Further, Plaintiffs note: "Courts routinely apply this rule to exclude from consideration new evidence presented for the first time in a movant's reply brief, particularly where the 'new' evidence could have been presented at the time of the original motion." (*Id.*, citing, *e.g.*, *Wallace v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 110140, at *18-19 (C.D. Cal. Nov.

23, 2009); *SEC v. Private Equity Mgmt. Group, Inc.*, 2009 U.S. Dist. LEXIS 75158, at *21 (C.D. Cal. Aug. 10, 2009); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 976 (N.D. Cal. 2006)).

Plaintiffs request the Court should strike the evidence supporting the assertion that "Solorio agreed to the arbitration agreement at ECF 7-4, and not the August 2018 version at ECF 7-5 as it stated in its opening papers." (*Id.*)  In addition, Plaintiffs argue the Court should not consider the LMS Report in Exhibit F, because Defendant "never provided any briefing or explanation on that LMS Report until its reply." (*Id.*)  Plaintiffs contend the reply evidence related to the LMS Reports "raises credibility issues at to Defendant's declarations and HR recordkeeping, all of which are particularly important in the absence of signed agreements." (*Id.* at 5)  Plaintiffs assert also, "Defendant offers no real explanation as to why an abridged version of the LMS Report – that omitted key entries regarding arbitration modules – was proffered in support of the motion." (*Id.* at 6)  According to Plaintiffs, "simply saying that it was a 'clerical error' ignores the issue of why there were LMS Reports that omitted some, but not all, of the arbitration courses in the first place." (*Id.*)

Although Plaintiffs contend the evidence submitted on reply should be stricken, the Court granted the parties' stipulation allowing Plaintiffs to file a sur-reply to counter the new arguments and evidence presented in reply. *See El Pollo Loco v. Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003).  To the extent Plaintiffs suffered any initial harm from Defendant's clarification of the evidence found in the moving papers and submission of supplemental declarations in the reply, this was cured when Plaintiffs filed their sur-reply.  Because Plaintiffs had the opportunity to respond, the Court will consider the evidence presented on reply. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Thus, the objection is overruled.[1]

Also, the Court finds the new evidence does not raise credibility issues as to the evidence provided.  To the contrary, the differences between the LMS Reports found in Exhibits E and F was explained by Ms. Patel, who noted "the person pulling down the report has the option to customize the fields that will appear in the report." (Doc. 10-2 at 3, ¶ 6)  Because different customizations differed

---

[1] Some of the evidence to which Plaintiff objects was not new, as Defendant filed Exhibits A, B, C, D, E, and F in support of the initial motion.  Indeed, Plaintiff acknowledges that prior to the filing of the motion, she  reviewed the Arbitration Agreements in Exhibits A and B, as well as the complete LMS Report that Defendant referred to in reply, as indicated in the evidence in Exhibit F.

between Exhibits E and F, the reports are not inconsistent, but instead, Exhibit F merely contained "more extensive" information.  (*Id.*)  Plaintiffs have not presented any evidence that casts doubt upon the veracity of the exhibits presented, or the statements made by Ms. Patel regarding her verification of the agreement viewed by Solorio when she completed the "Arbitration Agreement for CA – ABC Phones of NC" course.  Thus, the objection is overruled.

### D.   Conclusion

At the time Diaz and Solorio completed the "on-boarding" process for employment with Defendant, the company required completions of courses in its LMS system related to arbitration. (Doc. 7-2 at 4, Patel Decl. ¶¶ 12-13, 15)  Plaintiff does not challenge the evidence that Diaz completed the publication course entitled "Arbitration Agreement for CA - ABC Phones of NC" that displayed the agreement (found in Exhibit A) and curriculum course, which required acknowledgement of the terms, on July 2, 2016.   (*See* Doc. 7-2 at 3-5, Patel Decl. ¶¶ 11-15, 18; *see also* Doc.7-7 [LMS Report for Diaz]).  In addition, based upon the evidence presented, the Court finds Solorio completed the publication course entitled "Arbitration Agreement CA - ABC Phones of NC," and viewed a PDF of the agreement found in "Exhibit A" on March 9, 2018.  (*See* Doc. 10-2 at 3-4, Patel Supp. Decl. ¶¶ 7-13; Doc. 10-3 at 3-8). The evidence shows also that Solorio completed the curriculum course—which required assent to the arbitration terms—on March 9, 2018.  (Doc. 10-2 at 2-3, Patel Supp. Decl. ¶ 5; Doc. 7-9 at 27 [LMS Report for Solorio])

### III.   Arbitration Agreement Terms

ABC Phones of North Carolina, Inc. implemented the Arbitration Agreement for disputes between the company and employees, and the agreement indicated it was made "[i]n consideration of Employee's employment or continued employment."  (Doc. 7-4 at 2)  Pursuant to the agreement:

> Company and Employee mutually agree to arbitrate before a neutral arbitrator (the "Arbitrator") any and all disputes or claims by and between Employee, on the one hand, and Company, its parent, subsidiary, and affiliated corporations and entities, and each of their present and former officers, directors, agents, and employees (the "Company Parties"), on the other hand, including but not limited to any and all claims arising from or relating to Employee's recruitment, hiring, and employment, the termination of that employment, and any claims arising post-employment, including claims by or against the Company Parties, whether such disputes or claims arise in tort, in contract, or under a statute, regulation, or ordinance…

(Doc. 7-4 at 2, ¶ 1) Thus, the agreement encompasses "[c]laims for nonpayment or incorrect payment

of compensation and benefits, including, but not limited to, claims for salary, wages, overtime, premium pay, commissions, bonuses, severance, meal and rest periods, penalties, employee fringe benefits, stock options, and the like."  (*Id.*)  It also includes claims arising under "the California Labor Code, the California Business and Professions Code, the Fair Labor Standards Act, the Employee Retirement Income Securities Act (ERISA), or any other federal, state, or municipal laws concerning wages, compensation, or employee benefits."  (*Id.*)

The Agreement indicates the "Employee and Company understand and agree the arbitration of disputes and claims under this Agreement will be instead of a trial before a court or jury."  (Doc.  7-4 at 3, ¶ 2)  A demand for arbitration could be made by either ABC or an employee by serving the demand "on the opposing party within the statute of limitation applicable to the claim(s)."  (Doc. 7-4 at 3, ¶ 3)  A failure to serve a demand "within this time frame and according to [the] Agreement will constitute a waiver of all rights to raise any claims in any forum arising out of any dispute subject to arbitration to the same extent such claims would be barred if the matter proceeded in court."  (*Id.*)

Arbitration is to be "administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."  (Doc. 7-4 at 4, ¶ 3) Individuals were informed that "[a] copy of the rules of the American Arbitration Association may be obtained at the American Arbitration Association website at https://www.adr.org/aaa/faces/home." (*Id.*)  Further, the Agreement indicated "the Arbitrator will allow reasonable discovery to prepare for arbitration of any claims.  (*Id.*)  At a minimum, the Arbitrator will allow discovery authorized or permitted by the rules of American Arbitration Association and such other discovery required by law in arbitration proceedings."  (*Id.*)

The requested arbitration would "take place at office of the American Arbitration Association located within the county in which Employee is or was last employed by Company at the time the arbitrable dispute or claim arose, or if no such office exists, within the office of the American Arbitration Association closest to the location where Employee is or was last employed at the time the arbitrable dispute or claim arose."  (Doc. 7-4 at 5, ¶ 4)  Alternatively, the parties and the American Arbitration Association could agree to a different location.  (*Id.*)

Pursuant to the Agreement, "costs of arbitration, including the Arbitrator's fees, will be allocated and paid in accordance with then-applicable law."  (Doc. 7-4 at 5, ¶ 6)  Thus, ABC Phones "will pay all of the Arbitrator's fees and the arbitration-related costs," if required by applicable laws.  (*Id.*)  If ABC was not required to pay all fees and arbitration-related costs, "such fees and costs will be apportioned between the parties by the Arbitrator in accordance with applicable law."  (*Id.*)  The parties "will each pay their own attorney fees and costs incurred in connection with the arbitration," but the arbitrator may award fees and costs to the prevailing party when "a statute or contract in issue in the dispute authorizes the award of attorney fees and costs to the prevailing party."  (*Id.*)

The Arbitration Agreement includes a "Class Action Wavier" under which "the Company and Employee agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis."  (*Id.*)  The parties agreed: "There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative, or private attorney general action…"  (*Id.*) The issue of the validity and enforceability of the Class Action Wavier was reserved for resolution by "a civil court of competent jurisdiction and not by an arbitrator."  (*Id.*)

## IV.    The Federal Arbitration Act

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce and "governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2.  The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. This provision "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  A party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

Generally, the Court's role in applying the FAA is "limited to determining whether a valid agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute as issue."

11

1  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the response is

2  affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in

3  accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Systems*, 207 F.3d 1126, 1130 (9th Cir.

4  2000). Thus, a court shall stay or dismiss an action for arbitration proceedings to occur.  *See* 9 U.S.C.

5  §§ 3, 4; *see also Delgadillo v. James McKaone Enters. Inc.*, 2012 WL 4027019 at *3 (E.D. Cal. Sept.

6  12, 2012) (if the court "determines that an arbitration clause is enforceable, it has the discretion to

7  either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to

8  arbitration"). Because the FAA "is phrased in mandatory terms," "the standard for demonstrating

9  arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion."

10  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

11        "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

12  arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  As a

13  result, arbitration should only be denied when "it may be said with positive assurance that the

14  arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Tech.,*

15  *Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).  It is well-established that "arbitration

16  provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation."

17  *Lifescan*, 363 F.3d at 1011.

18        A party opposing arbitration has the burden to demonstrate the claims at issue should not be

19  sent to arbitration.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also*

20  *Mortensen v. Bresnan Communications LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("the parties

21  challenging the enforceability of an arbitration agreement bear the burden").  An arbitration agreement

22  may "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or

23  unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from

24  the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

25  340 (2011) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  In addition, a party

26  may show a claim should not be sent to arbitration if the right to arbitration has been waived. *Fisher v.*

27  *A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

28  **V.        Discussion and Analysis**

12

### A.     Involvement in Interstate Commerce

The parties do not dispute that the FAA applies to the action. Notably, "[t]he FAA applies to employment contracts if the employment affects interstate commerce." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1100 (C.D. Cal. 2015).  The Supreme Court has interpreted "involving commerce" broadly as it applies to the scope of the FAA.  *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 120-21 (2001).

ABC "is a retailer of cellular phones, other devices, and cellular plans" and "is a corporation organized under the laws of North Carolina with its principal place of business in North Carolina." (Doc. 1-3 at 3, ¶ 2; Doc. 7 at 3, citing Reed Decl. ¶ 2) Also, ABC "has numerous locations throughout California and the United States." (*See* Doc. 1-3 at 3, ¶ 2) The presumption of FAA applicability, coupled with evidence that Defendant operates nationwide, indicates that the FAA applies to the arbitration agreement.

### B.     Validity of the Arbitration Agreement

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002).  Here, the parties agree the law of the state of California governs the determination of whether the agreement is valid.  (*See generally* Doc. 7-1 at 5-6; Doc. 8 at 3-5, 9-15)

Pursuant to California contract law, the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)).  The Supreme Court explained, an agreement to arbitrate may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

///

1          1.      Parties capable of contracting

2          There is no dispute that Diaz and Solorio were capable of entering into contracts with ABC.

3    Thus, this factor is satisfied.

4          2.      Consent to arbitration

5          When evaluating a request to compel arbitration, the "threshold inquiry is whether the parties

6    agreed to arbitrate." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988)

7    Generally, "a party cannot be required to submit to arbitration any dispute which he has not agreed so

8    to submit." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986).

9    Although technology "exposed courts to many new situations, it has not fundamentally changed the

10   principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014), quoting

11   *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). One principle that remains

12   unchanged is that "[m]utual manifestation of assent, whether by written or spoken word or by conduct,

13   is the touchstone of contract." *Id.*, quoting *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 29 (2d Cir.

14   2002).

15         The contracting parties manifest mutual assent when a "specific offer is communicated to the

16   offeree, and an acceptance is subsequently communicated to the offeror." *Netbula, LLC v. BindView*

17   *Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007), citing *Russell v. Union Oil Co.*, 7 Cal. App.

18   3d 110, 114 (Ct. Cal. App. 1970). With the Internet and digital software, the Court must examine how

19   the terms of an agreement were presented to a user, and how a user indicated his or her consent to the

20   terms. *Nguyen*, 763 F.3d at 1176-77.  When software or a website requires a user to take an affirmative

21   action to review the terms and indicate consent, courts have routinely determined the user indicated his

22   or her consent.  *See Nguyen*, 763 F.3d at 1175-1176; *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d

23   829, 837-38 (S.D.N.Y. 2012) (consent may be found where the software "forces the user to actually

24   examine the terms before assenting").

25         Plaintiffs argue that ABC failed to provide sufficient evidence that they assented to the

26   arbitration agreement.  (Doc. 8 at 8)  According to Plaintiffs, Solorio does not recall specifically what

27   documents she was required to sign when she began working for ABC, though she does not deny use

28

of the LMS system as part of the "onboarding" process.[2]  (Doc. 8-1 at 2, Solorio Decl. ¶ 4)  However, "nothing in the law requires a party to remember having contracted for the agreement to be valid." *Pinto v. Squaw Valley Resort, LLC.*, 2018 WL 5630702 at *2 (E.D. Cal. 2018).  Thus, the fact that an individual "does not remember signing [an] Arbitration Agreement … is not sufficient." *See Garcia v. NRI USA, LLC*, 2018 WL 3702293 (C.D. Cal. Aug. 1, 2018).

In *Garcia*, the plaintiff "challenge[d] the validity of the Arbitration Agreement, claiming she [did] not remember signing it."  *Id.*, 2018 WL 3702293 at *2.  However, the defendants presented testimonial evidence to show that Garcia assented to the agreement, including:

> • Each employee or prospective Decton employee, including Plaintiff, is required to create an online user account within the HR System, which in turn requires the employee or prospective employee to create her own unique username and secure password. [Citation.]
>
> • Plaintiff was required to use her unique username and password when she signed into the HR System in order to apply for employment and to sign electronic forms and agreements. [Citation.]
>
> • The only way for Plaintiff to access the Arbitration Agreement was by signing into the online HR System with the confidential, unique username and password she created. [Citation.]
>
> • Plaintiff affirmatively indicated through the HR System her agreement to abide by the terms and conditions of the Arbitration Agreement and her electronic signature and the date was automatically inserted on the form. [Citation.]

*Id.* at *2-3 (citations omitted). The court determined, "Plaintiff's testimony that she does not remember signing the Arbitration Agreement or accessing the online system is not sufficient to contradict [this] evidence."  *Id.* at *3.

Similarly, Defendant presents evidence that Diaz and Solorio were "provided each… [with] a unique username to be used to access the LMS and ABC's intra-net," and upon the initial login, "the LMS system forced each of them to create a personal password."  (Doc. 7-2 at 3, Patel Decl. ¶¶ 8-9) As part of the on-boarding process, Plaintiffs "were required to complete two 'courses' in the LMS." (*Id.*, ¶ 11) The first course required Plaintiffs to input their unique usernames and passwords prior to the display of "a PDF of the Arbitration Agreement for CA - ABC Phones of NC."  (*Id.*)  Once the

---

[2] Diaz does not provide any statements regarding whether he recalls use of the LMS system or the courses related to arbitration.

Arbitration Agreement PDF launched, Plaintiffs "had to back out… and launch the second course, which informed them that "by clicking a button labeled 'Acknowledge,' Plaintiffs were agreeing to the terms" of the agreement.  (*Id.*, ¶¶ 12-13)  Only after both courses—including reviewing the Arbitration Agreement in PDF form and the consent to terms— "was the Arbitration Agreement considered completed."  (*Id.*, ¶ 15)  The evidence submitted by ABC—including the LMS Reports transcripts— establish Diaz completed the arbitration courses on July 2, 2016. (Doc. 7-2 at 3-5, Patel Decl. ¶¶ 11-15, 18; Doc.7-7 [LMS Report for Diaz]).  Solorio completed the arbitration courses on March 9, 2018. (*See* Doc. 10-2 at 2-4, Patel Supp. Decl. ¶¶ 5, 7-13; Doc. 10-3 at 3-8; Doc. 7-9 at 27 [LMS Report for Solorio]).  Given the LMS courses displayed the terms and required consent, Defendant has established that Plaintiffs gave their consent digitally to the Arbitration Agreement.  Solorio's statement that she does not recall the agreement is not sufficient to dispute this evidence. *See Pinto*, 2018 WL 5630702 at *2; *Garcia*, 2018 WL 3702293 at *2-3; *see also Tagliabue v. J.C. Penney Corp., Inc.,* 2015 WL 8780577, at *2 (E.D. Cal. Dec. 15, 2015) (noting declaratory evidence may be sufficient to establish electronic signatures).

### 3.    Conclusion

Plaintiffs do not argue there was not a lawful object to the agreement or insufficient consideration.  Thus, the Court finds Solorio and Diaz assented to viable contracts under California law.  *See Parsons Co.*, 195 F.3d at 462; *Marshall & Co.*, 242 Cal. App. 2d at 196.

### C.    Enforceability of the Arbitration Agreements

Under California law, an arbitration agreement may only be invalidated for the same reasons as other contracts.  Cal. Code Civ. Proc. § 1281.  For example, a contract "is unenforceable if it is both procedurally and substantively unconscionable."  *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)).  Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results."  *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1532 (1997) (citations omitted).  Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree. *Davis*, 485 F.3d at 1072; *Stirlen*, 51 Cal. App. 4th at 1532.  Consequently, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural

unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 99 (2000)).

ABC notes that its arbitration agreement has been enforced in other actions in the Ninth Circuit. (Doc. 7-1 at 7, citing *Itkoff v. ABC Phones of North Carolina*, No. 02043-JLS-JDE, 2018 WL 6242158 (C.D. Cal. Oct. 11, 2018); *Akrami v. ABC Phones of North Carolina*, No. 2:19-cv-02547-JLS-JDE, 2019 WL 6998776 (C.D. Cal. Nov. 27, 2019); and *Aguilar v. ABC Phones of North Carolina*, No. 2:19-cv-02244-JLS-JDE (C.D. Cal. Nov. 27, 2019)). On the other hand, Plaintiffs argue the agreement is procedurally and substantively unconscionable and should not be enforced. (Doc. 8 at 10-15)

### 1. Procedural unconscionability

Procedural unconscionability focuses on the "manner in which the contract was negotiated and the circumstances of the party at the time." *Kinney v. United Healthcare Servs*., Inc., 70 Cal. App. 4th 1322, 1329 (1999). The Court must consider both oppression and surprise "due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114. Oppression derives from a lack of "real negotiation and an absence of meaningful choice," while surprise arises from the terms of the bargain being "hidden in a prolix printed form," or drafted in "fine-print terms." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

#### a. Oppression

In evaluating the process in which the parties entered into an arbitration agreement, the Court considers whether the contract was "imposed on employees as a condition of employment." *Soltani*, 258 F.3d at 1042. In general, under California law, it is "procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievance in a judicial forum." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see, e.g., Armendariz*, 24 Cal.4th at 113 (explaining an arbitration agreement was procedurally unconscionable because it was imposed on employees as a condition of employment, and there was no opportunity for them to negotiate); *Aral v. Earthlink, Inc.*, 134 Cal.App.4th 544, 557 (2005) (an arbitration clause on a "take it or leave it" basis demonstrates "quintessential procedural unconscionability"); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107 (2004) (finding an agreement procedurally unconscionable because it was a prerequisite of employment and the employee did not have an "opportunity to

negotiate or refuse to sign the arbitration agreement"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Ct. App. 2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability"). Plaintiffs contend the agreement was "an adhesion contract," and they "had the ability only to accept the provision and could not alter or modify it."  (*Id.* at 12-13).

Diaz was required to accept the terms of the arbitration agreement if he wanted to be eligible to earn commissions once he agreed to continue employment with ABC after it acquired 4G Wireless. (Doc. 7-2, Patel Decl. ¶¶ 5, 18) Thus, ABC indicated Diaz's opportunities would be more limited if he did not accept the terms.

Solorio was required to complete the arbitration courses as part of the "normal on-boarding process."  (Doc. 7-1 at 2)  Solorio faced the choice of accepting the arbitration agreement or seeking employment elsewhere.  As such, the company was in a stronger bargaining position than Plaintiffs. *See Armendariz*, 24 Cal. 4th at 115 (explaining "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration agreement"). Because the Arbitration Agreement was offered to both Diaz and Solorio on a "take it or leave it" basis, this factor supports a conclusion that the agreement was procedurally unconscionable. *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002).

*b*        *Surprise*

Under California law, Plaintiffs cannot avoid the terms of a contract by asserting they did not— or were unable to—read the terms of an arbitration agreement before signing it.  *See Marin Storage & Trucking, Inc.*, 89 Cal.App.4th 1042, 1049 (2001) ("A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing").  Plaintiffs were presented with the Arbitration Agreement in PDF format in the first arbitration course in the LMS.  Thus, Plaintiffs are unable to show "surprise" because the terms were not hidden from view or drafted in "fine-print terms."  *See Bruni*, 160 Cal. App. 4th at 1288; *Sanchez*, 61 Cal. 4th at 911.

Because the agreement to submit to Arbitration Agreement was offered on a "take it or leave it" basis, the agreement was procedurally unconscionable.  *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002).  However, the lack of surprise supports a conclusion that the level of

18

procedural unconscionability is lessened. *See Stirlen*, 51 Cal.App.4th at 1532 (directing the court to consider both "oppression and surprise").

### 2.     Substantive unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (Ct. App. 2002). While "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," substantive unconscionability "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting the forum for itself." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (quoting *Armendariz*, 24 Cal. 4th at 118).  The focus of the Court's inquiry is whether an agreement is one-sided and will have an overly harsh effect on the party not given an opportunity to negotiate its terms. *Flores*, 93 Cal. App. 4th at 854.  The Ninth Circuit instructs courts applying California law to arbitration agreements "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149.

In evaluating the substantive fairness of an arbitration agreement, the Court may consider various terms of the arbitration agreement, including which claims are subject to arbitration, any statute of limitations imposed, class action, fee and cost-splitting arrangements, remedies available, and modification of the agreement. *See Ingle*, 328 F.3d at 1180; *see also Sinclare v. Servicemaster Co.*, 2007 WL 3407138  (E.D. Cal. Nov. 14, 2007) ("factors that may indicate unconscionability include a forum selection clause of the employer's choice and preventing full recovery of damages by employees, while placing no such restriction on employers")  Here, Plaintiffs argue the agreement is "unconscionable because it threatens employees with arbitral costs under some undefined "applicable law" but provides no indication to these laypersons of what that actually means."  (Doc. 8 at 13)

### a.     *Claims subject to arbitration*

An arbitration agreement that "compels arbitration of the claims employees are most likely to bring against [the employer] but exempts from arbitration the claims [the employer] is most likely to bring against its employees" is substantively unconscionable. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785 (2002) (quoting *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175-76 (Ct. App.

1   2002).  For example, in *Ferguson* and *Mercuro*,[3] the courts found Countrywide's arbitration agreement

2   was substantively unconscionable, because it excluded claims "for intellectual property violations,

3   unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential

4   information." *Ferguson*, 298 F.3d at 785 *Mercuro*, 96 Cal. App. 4th at 176.

5          ABC's Arbitration Agreement encompasses "any and all disputes or claims by and between

6   Employee on the one hand, and Company, its parent, subsidiary, and affiliated corporations and

7   entities, and each of their present and former officers, directors, agents, and employees …, on the other

8   hand."  (Doc. 7-4 at 2, ¶ 1)  This includes "any and all claims arising from or relating to Employee's

9   recruitment, hiring, and employment, the termination of that employment, and any claims arising post-

10  employment."  (*Id.*)  The Arbitration Agreement indicates this includes claims for unfair business

11  practices; "for nonpayment or incorrect payment of compensation and benefits;" and "relating to the

12  misappropriation of trade secrets or confidential information, breach of duty, unfair competition, or

13  other similar claims."  (*Id.* at 2-3, ¶ 1(a)-(g))  However, the agreement "does not apply to claims for

14  worker's compensation benefits or unemployment compensation benefits."  (*Id.* at 10)

15         Significantly, unlike in *Armendariz*, the agreement does not exempt ABC from arbitrating

16  disputes it has with the employee.  Rather, the Plan notes that "any and all" disputes between the ABC

17  and its employees are subject to arbitration.  (Doc. 7-4 at 2) Thus, it does not appear Defendant has

18  reserved for itself the ability to seek judicial intervention as to claims brought by it against employees

19  while requiring the employees to arbitrate claims against ABC.

20                            *i.    Provisional remedies*

21         ABC's Arbitration Agreement indicates that "nothing in this Agreement prohibits either party

22  from seeking provisional remedies in court," which include "temporary restraining orders, preliminary

23  injunctions, and other provisional remedies."  (Doc. 7-4 at 3, ¶ 2) Consequently, there is nothing that

24  precludes a party —whether a prospective, current or former employee—from seeking an injunction

25  against ABC. Thus, the provision is not substantively unconscionable.

26                            *ii.   Individual claim requirement*

27

28   _____

     [3] Both cases involved the arbitration agreement of Countrywide Credit Industries.  *See Ferguson*, 298 at 784
     ("During oral argument, counsel for Countrywide conceded that the provisions of the arbitration agreement in the present
     case are the same as the provisions of the arbitration agreement at issue in *Mercuro*").

Plaintiffs do not challenge the provision requiring claims to be brought individually as substantively unconscionable. (*See* Doc. 8 at 13-14) This Court previously observed that "an arbitration agreement in which an employee agrees to arbitrate claims against an employer on an individual − rather than on a class or collective − basis, is enforceable." *Guerrero v. Halliburton Energy Services, Inc.*, 2018 WL 3615840 at *5 (citing *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018)).  Thus, the provision does not render the Arbitration Agreement substantively unconscionable.

*iii.*     *Conclusion*

The totality of the claims subject to arbitration does not appear unconscionable. *See Ferguson*, 298 F.3d at 784, n.6 (explaining substantive unconscionability may be demonstrated when an employer seeks to enforce "what is essentially a unilateral arbitration agreement" because the company excludes claims it may bring against the employee from the agreement).

*b.*     *Filing fees and cost arrangement*

When arbitration is a condition of employment, an employer "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear . . . in court." *Armendariz*, 24 Cal. 4th at 110 (emphasis in original).  A scheme that makes each party bear half the costs of the arbitration "alone would render an arbitration agreement unenforceable." *Circuit City v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002).  For example, the Ninth Circuit found a cost-splitting provision substantively unconscionable when the agreement forced the plaintiffs to pay the filing fee up to a maximum of $125.00 and share costs equally after the first day of arbitration. *Ferguson*, 298 F.3d at 781*; see also Ingle*, 328 F.3d at 1177-78 (finding a provision unconscionable that stated "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award").

ABC's Arbitration Agreement includes the following  provision governing "Costs of Arbitration and Recovery of Attorney Fees":

> The costs of arbitration, including the Arbitrator's fees, will be allocated and paid in accordance with then-applicable law. If required by applicable law, Company will pay all of the Arbitrator's fees and the arbitration-related costs. If, however, under applicable law, Company is not required to pay all of the Arbitrator's fees and the arbitration-related costs, such fees and costs will be apportioned between the parties by the Arbitrator in accordance with applicable law, and, if applicable law is silent on this issue, such arbitration fees and costs will be allocated between and paid equally by Company and Employee.

21

1

2

3

4

5

> Except as otherwise required under applicable law, Company and Employee will each pay their own attorney fees and costs incurred in connection with the arbitration. However, the Arbitrator will not have authority to award attorney fees and costs to the prevailing party unless a statute or contract at issue in the dispute authorizes the award of attorney fees and costs to the prevailing party, in which case the Arbitrator will have the authority to make an award of attorney fees and costs to the same extent available under applicable law. If there is a dispute regarding whether Company or Employee is the prevailing party in the arbitration, the Arbitrator will decide this issue.

(Doc. 7-4 at 5)

6

7

8

9

10

11

12

13

14

15

16

Plaintiffs argue this fees and costs "provision is substantively unconscionable because it threatens employees with arbitral costs under some undefined 'applicable law' but provides no indication to these laypersons of what that actually means." (Doc. 8 at 13) Plaintiffs contend that under the agreement, they "may be left to pay indeterminate arbitration fees unless (1) the arbitrator decides under some unspecified body of law that Defendant is required to pay the arbitration fees; or (2) Plaintiffs persuade the arbitrator to exercise unbounded discretion not to apportion any of the fees to Plaintiffs." (*Id.* at 14) Thus, Plaintiffs assert, "The fee provision here has the same deleterious effect as the fee provision in *Armendariz*—employees faced with a vague and unknown risk of substantial arbitration fees and costs will be dissuaded from bringing claims against Defendant to hold it accountable for its violations of California law." (*Id.*, citing *Armendariz*, 24 Cal.4th at 111)

17

18

19

20

21

22

23

24

Defendant argues the provision is not unconscionable and "the plain language of Defendant's Arbitration Agreement does not require Plaintiffs to pay any costs that would violate the California Supreme Court's holding in *Armendariz*." (Doc. 10 at 7) Defendant observes, "In essence, Plaintiff's argument is her contention that the provision is too confusing for "employee-plaintiffs." But Plaintiffs cite no authority that stands for the proposition that an arbitration agreement is substantively unconscionable on this ground." (*Id.*) Instead, Defendant notes that "a contract is enforceable against a signatory even if he or she does not read the agreement or understand the provisions it contains." (*Id.*, citing *Nguyen v. Applied Medical Resources Corp.*, 4 Cal. App. 5th 232, 249 (2016); *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88 (2003)).

25

26

27

Significantly, the agreement indicates the arbitrator has "authority to make an award of attorney fees and costs to the same extent available under applicable law." (Doc. 7-4 at 5, ¶ 6) In

28

22

addition, costs are to "be allocated and paid in accordance with then-applicable law." (*Id.*)  Faced with

identical terms, the Central District observed:

> In California, applicable law provides that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 6 P.3d at 687. The cost provision in the Arbitration Agreement does not conflict with this requirement and is therefore not substantively unconscionable.

*Itkoff v. ABC Phones of North Carolina, Inc.*, 2018 WL 6242158 at *8 (C.D. Cal. Oct. 11, 2018)

(citing, *e.g. Jackson v. Rent-A-Ctr. W., Inc.*, 581 F.3d 912, 919 (9th Cir. 2009) [no substantive

unconscionability where "the agreement itself effectively states that the fee-sharing provision is

inapplicable if it is unconscionable under [applicable state] law"], *rev'd on other grounds*, 561 U.S. 63

(2010)).  Because the fees and costs provision clearly is limited to applicable law, ABC employees are

not required to incur any type of costs they would otherwise avoid in court.

Moreover, as Defendant asserts, the "general rule [is] that one who assents to a contract is

bound by its provisions and cannot complain of unfamiliarity," even when claiming difficulty with the

language.  *Madden v. Kaiser Found. Hospitals*, 17 Cal. 3d 699, 710 (1976).  Thus, Plaintiffs'

understanding of the fees and costs provision—or lack thereof—does not render the Arbitration

Agreement substantively unconscionable.

### c.   Location of arbitration

A provision that requires the arbitration to occur in a location inconvenient to the plaintiffs may

be substantively unconscionable.  A forum selection clause requiring arbitration in a distant forum is

unconscionable where it imposes significant hardships on the weaker party and has "no justification

other than as a means of maximizing an advantage." *Bolter v. Superior Court*, 87 Cal. App. 4th 900,

910 (2001); *see also Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006) (finding a

provision designating Boston as the arbitral forum was unconscionable under California law because it

required arbitration "only a few miles from [the employer's] headquarters, but three thousand miles

away from Nagrampa's home); *Pinedo v. Premium Tobacco Stores, Inc.*, 85 Cal. App. 4th 774, 781

(2000) (a provision requiring a Los Angeles plaintiff to arbitrate in Oakland was a factor showing

unconscionability of the agreement). Thus, courts have consistently determined clauses setting the

1    venue in a location inconvenient to an employee are substantively unconscionable.

2        The ABC Arbitration Agreement provides that "arbitration will take place at office of the

3    American Arbitration Association located within the county in which Employee is or was last

4    employed by Company at the time the arbitrable dispute or claim arose." (Doc. 7-4 at 5, ¶ 4) If the

5    AAA did not have an office in that county, arbitration could occur "within the office of the American

6    Arbitration Association closest to the location where Employee is or was last employed at the time the

7    arbitrable dispute or claim arose." (*Id.*) Finally, arbitration could occur at "any such other location to

8    which the parties and the American Arbitration Association might agree." (*Id.*) This provision does

9    not impose significant hardship upon employees, and ABC does not receive an advantage from the

10   location. Thus, this provision is not substantively unconscionable.

11                              *d.    Discovery*

12       The Supreme Court recognized that arbitration typically involves limited discovery rights.

13   *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31 (1991). Parties to an arbitration agreement

14   are "permitted to agree to something *less than* the full panoply of discovery provided in Code of Civil

15   Procedure section 1283.05." *Armendariz,* 24 Cal. 4th at 106 (emphasis added). For a discovery

16   provision to be unconscionable, it must be so limited as to "prove insufficient to allow [plaintiffs] a

17   fair opportunity to present their claims." *Gilmer*; 500 U.S. at 31; *see also Armendariz,* 24 Cal. 4th at

18   106 (holding plaintiffs "are entitled to discovery sufficient to adequately arbitrate their statutory

19   claims, including access to essential documents and witnesses"). Further, discovery provisions cannot

20   be one-sided. *See Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 786 (9th Cir. 2002)

21   (finding the discovery provision one-sided because it only placed limits on the number of corporate

22   representatives that could be deposed, but no comparable limits for the plaintiff).

23       Under the terms of the agreement between ABC and Plaintiffs, the arbitrator must "allow

24   reasonable discovery to prepare for arbitration of any claims." (Doc. 7-5 at 4) This includes, at a

25   minimum, discovery authorized by law and "permitted by the rules of American Arbitration

26   Association." (*Id.*) Plaintiffs do not assert this provision is insufficient, and there is no evidence the

27   AAA rules fail to "provide for adequate discovery." *See Armendariz,* 24 Cal. 4th 83 at 122. To the

28   contrary, courts have observed the AAA rules provide sufficient discovery. *See, e.g., Lagatree v. Luce,*

*Forward, Hamilton & Scripps*, 74 Cal.App.4th 1105, 1130 n. 21 (1999) (noting AAA rules provide "[t]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute," and the provision is "fair to claimants"); *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1475-76 (2009) (finding no meaningful difference between AAA rules for discovery and the discovery rules in the California Arbitration Act, which were sufficient in *Armendariz*). Therefore, the discovery provision of the Arbitration Agreement is not substantively unconscionable.

*e.     Remedies*

Remedy provisions that "fail[] to provide for all the types of relief that would otherwise be available in court" by limiting an employee's total and punitive damages are substantively unconscionable. *Adams*, 279 F.3d at 895 (citing *Cole v. Burns Int'l Sec. Servs.,*105 F.3d 1465, 1482 (9th Cir. 1997)). The Arbitration Agreement provides the arbitrator has "the authority to award any and all relief authorized by applicable law in connection with the asserted claims or disputes." (Doc. 7-4 at 5) Therefore, the agreement does not improperly limit available remedies, and the provision is not substantively unconscionable.

*f.     Unilateral amendment*

When provisions of an arbitration agreement permit an employer to unilaterally amend or terminate the agreement, even with written notice to employees, the provision is substantively unconscionable. *See, e.g., Ingle*, 328 F.3d at 1179; *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1021-22 (E.D. Cal. 2008). The Ninth Circuit explained a provision granting an employer unilateral power to amend or terminate an arbitration agreement, even with written notice to employees, proscribes an employee's ability negotiate and "embeds its adhesiveness." *Ingle*, 328 F.3d at 1179.

The agreement provides it "may be modified only in a writing expressly referencing this Agreement and issued by the Company's President." (Doc. 7-4 at 5, ¶ 8) ABC maintains the right to amend or terminate the Arbitration Agreement, and "affords no such power to employees." *See Ingle*, 328 F.3d at 1179. Consequently, the provision is substantively unconscionable.

*g.     Agreement as a whole*

California law provides: "If the court as a matter of law finds the contract or any clause of the

25

contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Cal. Civ. Code § 1670.5(a).  Refusing to enforce an arbitration agreement is appropriate "only when an agreement is permeated by unconscionability."  *Armendariz*, 24 Cal.4th 83 at 122 (internal quotation marks omitted).  Courts often look to whether the offending provisions "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage."  *Id.* at 124; *see also Ferguson*, 298 F.3d at 787-88.  For example, the Ninth Circuit found an arbitration agreement was "permeated by unconscionable clauses" where there was a "lack of mutuality regarding the type of claims that must be arbitrated, the fee provision, and the discovery provision."  *Ferguson*, 298 F.3d at 788.

In this agreement, the only provisions of the Program appearing substantively unconscionable are those granting unilateral amendment and termination of the dispute resolution program.  The Arbitration Agreement is not permeated by unconscionability and does not establish an inferior forum that works to ABC's advantage.  *See Armendariz*, 24 Cal. 4th 83 at 122.  Significantly, it does not appear the provisions regarding amendment and termination are relevant to Plaintiffs' claims, and may be severed from the agreement.  *See, e.g., Grabowski*, 817 F. Supp. 2d 1159; *Stacy*, 2012 U.S. Dist. LEXIS 150345, at * 31-32.  Accordingly, the provisions governing amendment and termination may be severed, and the arbitration agreement enforced because the terms, taken as a whole, do not appear substantively unconscionable.

**C.     Scope of the Arbitration Agreement**

To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960).

Each of Plaintiffs' claims arise out of their employment with Defendant, including violations of the California Labor Code: (1) failure to compensate for all hours; (2) failure to pay overtime

26

wages; (3) failure to provide required meal and rest periods; (4) failure to timely reimburse for necessary business expenditures; (5) failure to provide accurate, timely, and itemized wage. Plaintiffs also state a claim for unfair business practices in violation of Cal. Bus. & Prof. Code § 17200.  (*See* Doc. 1-3 at 2, 16-27)  Significantly, the Arbitration Agreement indicates it encompasses "all claims arising from or relating to…

> Claims for nonpayment or incorrect payment of compensation and benefits, including, but not limited to, claims for salary, wages, overtime, premium pay, commissions, bonuses, severance, meal and rest periods, penalties, employee fringe benefits, stock options, and the like, whether such claims derive from alleged express or implied contract or obligation, equity, the California Labor Code, the California Business and Professions Code the Fair Labor Standards Act, the Employee Retirement Income Securities Act (ERISA), or any other federal, state, or municipal laws concerning wages, compensation, or employee benefits"

(Doc. 7-4 at 2, ¶ 1(d))  Thus, it is clear the agreement encompasses the wage and hour claims presented by Plaintiffs in their complaint.

### D.      Entry of a Stay

The FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C § 3.

The Seventh and Tenth Circuits have adopted the view that a stay is the most reasonable approach rather than a dismissal, explaining: "[I]t would be 'wasteful' and inconsistent 'with principles of judicial economy' for a court which has jurisdiction of the parties to be required to dismiss the parties, and to compel one of them to sue in another forum to enforce its award under § 9." *Denver & Rio Grande W. R. Co. v. Union Pac. R. Co.*, 868 F. Supp. 1244, 1250 (D. Kan. 1994) *aff'd*, 119 F.3d 847 (10th Cir. 1997), quoting *In re VMS Sec. Litig.*, 21 F.3d 139, 145 (7th Cir. 1994). Therefore, the Court recommends the matter be stayed pending the completion of arbitration.

## VI.     Findings and Recommendations

Plaintiffs and ABC entered into valid arbitration agreements, which encompass the issues in

dispute.  As a result, "there is a presumption of arbitrability" and ABC's motion to compel arbitration should not be denied.  *See AT&T Tech., Inc.*, 475 U.S. at 650.  Further, the Court finds a stay of the proceedings while arbitration is pending is appropriate.  *See* 9 U.S.C. §§ 3, 4; *see also Delgadillo v. James McKaone Enters. Inc.*, 2012 WL 4027019 at *3 (E.D. Cal. Sept. 12, 2012) (if the court "determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration").  Based upon the foregoing, the Court **RECOMMENDS**:

    1.     The clause governing amendment be severed from the agreement;

    2.     Defendant's motion to compel arbitration on an individual basis be **GRANTED**;

    3.     The matter be **STAYED** to allow the completion of the arbitration;

    4.     Counsel be directed to file a joint status report within 120 days and every 120 days thereafter.  In addition, counsel be directed to file a joint status report within 10 days of the determination by the arbitrator; and

    5.     The Court retain jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).


IT IS SO ORDERED.

    Dated:  __**February 3, 2021**__           _____**/s/ Jennifer L. Thurston**
                                      UNITED STATES MAGISTRATE JUDGE